**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case Number: 24-CR-332 (JMC)** |
| | : | |
| **NAHVARJ MILLS,** | : | |
| **DEVIN ROBERTS,** | : | |
| **Defendants.** | : | |

**GOVERNMENT'S MEMORANDUM**
**IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, hereby submits this Memorandum in support of its Motion for Pretrial

Detention of Defendants Nahvarj Mills and Devin Roberts under 18 U.S.C. §§ 3142(f)(1)(A) and

(E), respectively. Defendant Mills has been indicted in the United States District Court for the

District of Columbia on charges of: Count 1) Interstate Domestic Violence, in violation of 18

U.S.C. § 2261(a)(1) and (b)(3); Count 2) Unlawful Possession of a Firearm and Ammunition by

a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in

violation of 18 U.S.C. § 922(g)(1); Count 3) Using, Carrying, Brandishing, and Discharging a

Firearm During and in Relation to, or Possessing a Firearm in Furtherance of a Crime of

Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and (iii); and Count 4) Assault With Intent

to Kill While Armed, in violation of 22 D.C. Code §§ 401, 4502. Defendant Roberts has been

indicted in the United States District Court for the District of Columbia on three charges: Count

5) Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime

Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. §

922(g)(1); Count 6) Assault With a Dangerous Weapon, in violation of 22 D.C. Code § 402; and

Count 7) Possession of a Firearm During a Crime of Violence, in violation of 22 D.C. Code, §

1

4504(b).

Because Defendant Mills is charged with a violation of Section 924(c), there is a statutory presumption in favor of his pretrial detention. *See* 18 U.S.C. § 3142(e)(3)(B). Moreover, under the factors outlined in 18 U.S.C. § 3142(g), there is no condition or combination of conditions that will reasonably assure the safety of any person and the community if either defendant is released. As a result, detention of both defendants is appropriate.

## BACKGROUND[1]

The instant case arises out of a months-long campaign of stalking, threats, dissemination of non-consensual pornography, and violence that Defendant Nahvarj Mills orchestrated against his ex-significant other, C-1. That campaign, which Mills has repeatedly referred to as his "warpath" or "war," culminated in three shootings at C-1's bedroom on January 21, 22, and 23, 2024. On the first two occasions, Mills conspired with his co-defendant, Devin Roberts, to execute the shootings. Defendant Roberts does not personally know C-1. On January 23, 2024, Defendant Mills returned alone to again shoot into C-1's bedroom. The current U.S. District Court Indictment charges Defendant Mills with offenses related to the January 23, 2024 shooting and Defendant Roberts with offenses related to the January 22, 2024 shooting. As described below, however, these offenses constitute pieces of an ongoing pattern of criminal conduct by Defendant Mills against multiple victims.

Defendant Mills and C-1 began dating in approximately December 2022. Defendant Mills reportedly became physically abusive on multiple occasions, and in approximately summer 2023, C-1 ended the relationship. Defendant Mills was unhappy about the breakup and in the fall

[1] The facts outlined in this section are drawn from D.C. Superior Court Arrest Warrants 2024 CRWSLD 000533 (Mills) and 2024 CRWSLD 000587 (Roberts) and supplemented with additional information learned during this investigation. These facts do not reflect the entirety of the information known to the government at this time.

began contacting C-1 from different numbers, appearing at her workplace in Maryland and her home in D.C., and eventually threatening to disseminate and actually disseminating sexually explicit images of her.

**I.   Stalking – November-December 2023**

On November 23, 2023, for example, C-1 received a text message from phone number 620-498-9147. The message read: "Got no job, got no kids, got no family. I have nothing to do. But what I do have, is the money to keep bothering you." On December 16, 2023, C-1 received a text message from the number saved in her phone as "Gloria," referring to Defendant Mills's grandmother, Gloria Cales, with whom he lived. The text message (emphasis added) read:

> Last txt. Just Really know this. I love u dearly like y the fuck you think I was always with you, waiting in ur room while ur @ work or Spending whole day @ hospital bcuz ur tummy hurts like tf i had ur back. I acknowledged my mistakes, even promised u wouldn't have no problems again. U & gloria secretly txtn talking shit bout me?! Nah fuck u & her! **Now im REALLY motivated! I only wanted peace & love but u wanna treat me as anything? Fuck it I'll be ur enemy**! U should of just took ur Christmas present had dinner & talked to me. Im just in the house working out a lot missing you. **Ima ruin every relationship you get** so help me god. Ima make Noora seem like a angel n[redacted]. I see some n[redacted] picking or dropping u off im fighting BOTH of yall. I simply don't care if i cant fight how i could before. Ima do enough damage. We could have just started fresh like it was our first date and we had no history. The goal was to get us back. But after seeing its fuk me, i just want u miserable, like ur new fake ass new buddy! U wan block me right, ur phone will have to stay on do not disturb forever n[redacted]! On my father. **Better change ur number & move somewhere else** n[redacted]. I don't even have anything to say on phone anymore its just principle. Remember i got time, money & no responsibilities. **All the time to focus on u! Ur whole house can jump me everyday & ill be back the next.** As u c I get hurt but i wont die n[redacted]. **I beat up my own bitch mother & fought her husband before!** u really think im scared of ANYONE? I only fear aids & a ugly baby. I don't even want beef but i go with the flow. **Better call the police** n[redacted], **ill die** n[redacted]. Ur gonna learn y nobody plays with me n[redacted]. **U hate me now huh, ur dating app ass gonna really hate u swiped me!** Just wanted u to be my Christmas present but k fuck u son. Lovers to enemies n[redacted]!

The next day, on December 17, 2023, at approximately 11:39 am, C-1 received a text message from phone number 443-781-1188, a Pinger[2] number associated with Defendant Mills's known iCloud account. The message (emphasis added) read:

> **Promise ur going to regret ever swiping me**. U wanna do me like this & Ignore my calls, my txts when I need u & even got u a Christmas present still! U thought I was wild before, now u really woke my savage up. **Remember no job, no responsibilities but lots of money. So I can do whatever.** U gave me new life & then snatched it away! SO IM TAKING SOMETHING TO. Gonna be fun wen I get M63 back, **u can keep blocking #s but I know where u sleep**. Go ahead block this to, will see u soon. Treating me like u hate me, ima give u a real reason to, on my father. Ima teach ur dating app ass crazy forreal. Id die.

On December 20, 2023, Defendant Mills parked his white BMW M6 outside C-1's home. C-1 observed the vehicle, which she recognized, and took photographs of it outside her home both in the early hours of the morning and in the evening. At approximately 10:49 AM, C-1 also received a text message from 202-995-9638, a Pinger number associated with Defendant Mills's known iCloud account. The message read: "On god I will be here when you get off. You are going to have to melly me on god. See u at 5."[4]

Around December 31, 2023, C-1 received 30 phone calls from "No Caller ID." These calls followed an occasion when C-1 met up with Defendant Mills in an effort to make amends. On that occasion, however, Defendant Mills pointed a firearm at C-1's head. At that time, C-1 did not call the police but attempted to cut off contact with Defendant Mills.

## II.   Civil Protection Order and Threats to C-1's Mother

---

[2] This number is one of many "virtual" or online phone number obtained by Defendant Mills and used to contact C-1 without revealing his true phone number. This particular number belongs to an online communications platform called Pinger, Inc. Pinger allows an individual to download an application to their phone and receive a working U.S. phone number different than the one associated with their cellular service.

[3] ¨M6" refers to MILLS's BMW M6 vehicle.

[4] ¨Melly" is a slang term for kill.

In January, as described further below, Defendant Mills did not cease contacting C-1 via email, phone, and social media. On January 2, 2024, C-1 reported Defendant Mills's conduct to the Metropolitan Police Department and filed a petition for a Civil Protection Order (CPO) in Case Number 2024 CPO 000061. After filing the petition for a CPO, C-1 indicated to a detective that she did not wish to proceed with criminal charges at that point. On January 2, 2024, C-1's mother texted Defendant Mills's known phone number in an effort to obtain an address at which to personally serve him with the protective order documents. Defendant Mills—who did not initially appear to know who was texting him—wrote, in relevant part: "If I dnt die n I c who u r **im shooting ur house up** after fair warning"; "**And if it's a girl ur getting gang raped then killed & house shot up**"; and "**Promise u SOMEBODY gonna die**." Defendant Mills also sent a photo of himself with Defendant Roberts, in which Mills is holding a firearm.

On January 5, 2024, a D.C. Superior Court Judge granted a Temporary Protective Order (TPO), directing Defendant Mills to stay away from C-1, her home, her workplace, her vehicle, and her family. The TPO ordered Mills not to have any contact with C-1 or her family directly or through a third party. On January 16, 2024, C-1's mother served Mills with the TPO and related documents personally, electronically, and via his grandmother at his residence.[5]

During a text message conversation in which C-1's mother electronically served Defendant Mills at his known phone number, he sent numerous sexually explicit photos and videos of C-1. Mills also wrote, "**I can easily pull this .40 trigger**," followed by photos of a firearm and ammunition that appear consistent with the .40 caliber firearm and ammunition later recovered from Mills's home pursuant to a residential search warrant.

---

[5] Copies of the documents were recovered from Mills's vehicle at the time of his arrest for a CPO violation on January 26, 2024.

On January 19, 2024, a D.C. Superior Court Judge granted a Civil Protection Order (CPO), which directed Defendant Mills to stay away from C-1, her home, her workplace, her vehicle, and her family. The CPO also ordered Mills not to contact C-1 in any manner. The Court specifically found that, in 2023, Defendant Mills had assaulted C-1 "on at least 3 occasions, including choking her, punching her in face and ribs, kicking her. Earlier this month, he threatened to kill her while holding a gun to her head." The CPO was issued as a default protection order after the Court found that proper service and notice were made on Mills, and Mills failed to appear.

### III.    Stalking and Non-Consensual Pornography – January-February 2024

In January 2024, Defendant Mills's unwanted communications to and about C-1 escalated to include dissemination of non-consensual pornography in addition to continued unwanted messages via text, social media, and email. One email C-1 received on January 1, 2024 from "Instagram Nahvarj" <whitef13m6@gmail.com>"[6] included numerous addresses, email addresses, and social media handles associated with C-1. Another message received the same day from the same account read (emphasis added):

> [C-1's first name] on my father everybody will definitely hate tf out of me like your whole family will want me Dead lls. Ill actually try to give great reason to. **U can change a # but I know where u live & + what ill do is permanent lls.** Regardless if I got beat up or jail, ur still out there. It will be permanent, me I will get out, my black eye will heal, you still will be out there permanently lls. Ur choice big dog, I don't even need your real number you can text me off app. Im just very hurt & very horny so let me lick ur asshole & pussy & fuck one more time. That is the peaceful road. I can't even attach half of All the videos of u I have on a email. But **be smart here, just make the deal, nobody even has to know. U get peace after & hell I'll even give you $500 and let you delete all of your shit just to make it more beneficial for you.**

---

[6] Records obtained from Google, Inc. indicate that Mills's known primary telephone number is listed as the recovery number for this email address, and several of the IP addresses which accessed the account temporally match IP addresses that accessed Mills's known Instagram account.

This message appears to reference Defendant Mills's possession of explicit videos of C-1.

The following day, January 2, 2024, C-1 began receiving messages from an Instagram account with handle @here_go_wgaca, which included a photo of C-1 as the profile picture. The verified number associated with the account was a phone number subsequently linked to Defendant Mills via legal process. The account also posted a story inviting followers to text a different number associated with Defendant Mills.  Although the vanity name for the account was initially listed as "tom jones," it changed to reflect C-1's full name. The biographical information for the account listed C-1's real home, work, and email addresses. At some point the profile also was edited to include C-1's real Instagram handle and a link to an OnlyFans account created in her name.

C-1 received numerous messages from this account indicating Defendant Mills's intent to disseminate sexually explicit images and videos of C-1. The messages explained how Mills planned to follow the same individuals C-1 followed and then share with them sexually content depicting C-1. Records obtained from Meta (Instagram) for this account revealed that Mills did, in fact, disseminate hundreds of sexually explicit images of C-1 to various accounts in January 2024.

Defendant Mills also disseminated printed versions of sexually explicit images of C-1. On January 6 and January 11, 2024, Ring camera footage captured an individual believed to be Defendant Mills outside C-1's home. The individual spread numerous typed out paragraphs containing threatening messages along with explicit images. The images were sexually explicit photos of C-1 that Mills obtained during their relationship, and C-1 never consented to Mills sharing those photos with anyone or otherwise publicizing them.

On January 6, C-1 was asleep at the time of the offense, but C-1's neighbor provided her with Ring camera videos of the offense. The Ring camera videos depict an individual placing items on the lawn in front of C-1's house. The individual is wearing black pants and a black hooded sweatshirt with the hood up and a white shirt visible around the waistband. On the back of the neck, where the hood meets the rest of the sweatshirt, are two white or silver shapes resembling circles. The individual also appears to be wearing yellow gloves, and the individual's face is mostly concealed. The gloves are consistent with those seen in a photo posted to Defendant Mills's Instagram account.

On January 11, 2024, C-1 again found sexually explicit photos scattered on her lawn and obtained Ring camera footage from her neighbor. The Ring camera videos depict an individual placing items on the lawn in front of C-1's house. The individual is wearing dark ripped pants with holes showing what appears to be his skin through the pants. The individual is also wearing a black hooded sweatshirt with the hood up and a white shirt visible around the waistband. On the front of the sweatshirt, there is large white skull. The individual is wearing yellow gloves, and the individual's face is only partially visible. On the video, the individual can be seen removing from his front sweatshirt pocket what appear to be papers consistent with the size and shape of printed photos or documents. In publicly accessible social media posts by Defendant Mills, he can be seen wearing a black sweatshirt with a skull on the front, consistent with the individual in the Ring video. Defendant Mills also sent a photo of himself in this sweatshirt to multiple witnesses.

On January 20, 2024, Defendant Mills again spread sexually explicit images outside the home of C-1. On this occasion, C-1 personally observed Defendant Mills in her front yard and saw him return to a vehicle along with another individual whom she recognized as another ex-

romantic partner of Mills. On January 29, 2024, C-1's family member again recovered sexually explicit photos from outside C-1's home, although C-1 was out of town on that occasion and did not report that incident to police. The other three incidents were reported to police.

These incidents followed a January 3, 2024 text message conversation with another individual, C-3, in which Defendant Mills sent C-3 sexually explicit photos of C-1 and stated that he planned to spread the photos at C-1's home the following weekend (January 6). During the same conversation, Defendant Mills threatened to also disseminate C-3's sexually explicit images and threatened to kill both C-1 and C-3. Defendant Mills ultimately did disseminate sexually explicit images of C-3 outside C-3's home in Virginia and mailed similar images to her. Records associated with Defendant Mills's known Instagram account have revealed that, around the same time period of January 2024, he threatened to disseminate the sexually explicit images of numerous women if they did not agree to have sex with him and/or send him additional images.

## IV.   Shootings – January 21, 22, 23, 2024

The campaign of stalking and violence escalated further in late January. Three separate shootings on January 21, 22, and 23, 2024 targeted C-1's bedroom. The January 22 and January 23, 2024 shootings are the subject of the current Indictment.

### A.  *January 21, 2024 Shooting (Not Yet Charged)*

On January 21, 2024, C-1 heard what she believed to be gunshots fired at or near her home. This shooting only came to light when federal law enforcement officers later spoke with C-1 about the January 22 shooting detailed further below. When interviewed about the January 22 shooting, C-1 indicated that she believed Defendant Mills had fired a gun at her residence the day prior, on January 21. The investigation revealed that a witness who lives in a neighboring

home also heard gunshots on January 21 and saw an individual flee the area and get into a dark-colored pickup truck. Surveillance footage from the area depicts an individual wearing dark clothing approach C-1's residence at approximately 11:00 AM, point a firearm in the direction of C-1's bedroom and fire multiple shots. CCTV security camera footage from the area then shows the individual flee and enter the passenger side of a distinctive black pickup truck consistent with the one registered to Defendant Roberts. Neither Defendant Roberts nor Defendant Mills currently is indicted in connection with the January 21, 2024 shooting.

B. *January 22, 2024 Shooting (Counts 5, 6, 7)*

On January 22, 2024, at approximately 3:16 am, MPD officers responded to C-1's residence and spoke with C-1, who reported that she heard gunshots while lying in bed. C-1 immediately got on the floor as bullets came through her bedroom window and struck the ceiling. C-1's family members who live in the home also reported hearing the gunshots and indicated that they observed what they believed to be a blue truck flee the scene. A ShotSpotter[7] alert indicated that six rounds were detected on January 22, 2024 at 03:06:18 AM in the vicinity of C-1's residence. Officers recovered multiple shell casings across the street from C-1's bedroom window. Law enforcement also obtained documentation of the damage to C-1's bedroom window and the multiple bullet holes in the ceiling above her bed.

Law enforcement officers obtained security footage from the vicinity of C-1's residence for the time frame surrounding the shooting. The videos depict an individual, walk to the side of C-1's residence. In the surveillance footage, the suspected shooter wears a dark gray or black puffy jacket with a hood or hat on their head. The individual pulls his hands from his pockets and raises both arms to point upwards at the location of C-1's bedroom, consistent with an individual

---

[7] ShotSpotter is a commercially operated technology which uses an array of microphones placed throughout Washington, D.C. to detect the sound of gunshots and triangulate the location from which the sound originates.

pointing a firearm. Security footage from the area cuts out during the precise moment of the shooting but picks up seconds later and depicts the individual fleeing from the scene. Minutes later, a distinctive black truck, consistent with the truck registered to Defendant Roberts, is seen driving past C-1's residence multiple times. A license plate reader check revealed an alert for Defendant Roberts's pick-up truck at the reader located around the intersection of Suitland Pkwy and Stanton Rd SE in Washington D.C. at 03:38:37 AM on January 22, 2024. This time is approximately 32 minutes after the shooting and in such proximity that the shooter could have driven to this location after the shooting.

### C.   Identification of Roberts – January 22, 2024 Shooting

Defendant Devin Roberts is charged in relation to this shooting that occurred on January 22, 2024. The evidence indicates that Roberts was the shooter on January 22, 2024.

As noted above, surveillance footage from January 22, 2024 shows the shooter wearing a dark gray or black puffy jacket with a hood or hat on their head. During this investigation, law enforcement located a photo of Defendant Roberts wearing a dark gray or black puffy jacket along with a gray hat consistent with that depicted on the January 22 surveillance footage. Further, at the time of his arrest pursuant to D.C. Superior Court Arrest Warrant 2024 CRWSLD 00058 on February 8, 2024, Defendant Roberts was wearing a dark gray or black puffy jacket consistent with that observed on the shooting suspect in surveillance footage from the January 22 shooting. Defendant Roberts was arrested as he was returning to his known vehicle, a Black 2002 Ford F-150 SVT Lightning. That vehicle has a distinct body shape and taillights, consistent with the truck observed on surveillance footage related to the January 21 and 22 shootings.

Following his arrest, Defendant Roberts was advised of and waived his *Miranda* rights and spoke with investigators. When confronted about the surveillance footage of his truck from

11

January 21, 2024, Defendant Roberts admitted to being in the truck. With respect to the January 22, 2024 surveillance footage, Defendant Roberts did not deny that he and Mills were in the truck together and specifically indicated that he (Defendant Roberts) was not the one driving the truck. Defendant Roberts acknowledged that he has allowed Defendant Mills to drive his truck. However, Roberts denied being the shooter on January 22, 2024.

Further, messages between Defendant Mills and Defendant Roberts confirm Roberts's role as the shooter on January 22, 2024. On January 22, approximately 27 hours after the first shooting and 11 hours after the second shooting, Defendant Mills sent a series of messages from his known Instagram account to Defendant Roberts's known Instagram account. One message included a photo of C-1's bedroom with a bullet hole in it. The photo of the window damage is consistent with those obtained by law enforcement depicting C-1's window following the January 22 shooting. The photo was preceded by a written message from Mills's account stating: "On god. Like son. ONE job tf is wrong with u. Like son this is embarrassing me…." The following day, on January 23, 2024, Defendant Roberts sent a message from his known iCloud account Defendant Mills's known iCloud account. The message from Defendant Roberts read: "All 6 shots went threw that one hole because I never move my hand the aim was steady asf." As indicated above, on January 22, 2024, Shotspotter indicated six rounds were fired in the vicinity of C-1's home. Defendant Roberts is prohibited from possessing a firearm, as he was convicted of a crime punishable by imprisonment for a term exceeding one year, in the Prince George's County Circuit Court Case Number CT190274X.

Accordingly, Defendant Roberts has been indicted on Counts 5, 6, and 7 in connection with his role in the January 22, 2024 shooting, which targeted C-1's bedroom.

D.  *January 23, 2024 Shooting (Counts 1, 2, 3, 4)*

On January 23, 2024, Defendant Mills returned to C-1's residence alone and shot at her bedroom window. On January 23, in the early hours of the morning, police again responded to C-1's residence in response to the sound of gunfire. C-1 described bullets coming through the window closest to her bed, distinct from the window damaged on January 22. C-1 showed officers the bullet holes in her window and in the ceiling over her bed. ShotSpotter detected three gunshots at 03:57:49 AM in the vicinity of C-1's home address, and officers recovered shell casings from the area.

E.  *Identification of Mills – January 23, 2024 Shooting*

Evidence associated with the January 23, 2024 shooting has revealed Defendant Mills to be the lone shooter on that occasion. When interviewed about the January 23, 2024 shooting, C-1 reported to law enforcement officers that she heard and recognized the sound of Defendant Mills's vehicle shortly after the gunshots. Defendant Mills's vehicle subsequently was seized pursuant to a Prince George's County Search Warrant on February 7, 2024. Law enforcement who had the opportunity to listen to the vehicle's exhaust noted the sound to be distinct and significantly louder than that of a typical vehicle.

Investigators also obtained security footage from the vicinity of C-1's residence for the time surrounding the shooting. The footage showed a white two-door coupe consistent with the white BMW M6 registered to Defendant Mills in the vicinity of C-1's residence within minutes of the shooting. One camera angle shows that the vehicle has a red interior, consistent with the interior of Mills's vehicle. Footage from a camera across the street from C-1's home shows the white two-door coupe drive up and park directly outside C-1's home. The same footage depicts an individual in a dark hooded sweatshirt exit the vehicle and approach the side of C-1's home,

where C-1's bedroom window is located. The shooting itself was not captured.[8] After the footage re-activates, it depicts the same individual return to the driver's side of the white vehicle and drive away.

Cell site data associated with Defendant Mills's phone further corroborates that he committed the shooting on January 23, 2024. Cell site data obtained from Mills's phone pursuant to a D.C. Superior Court search warrant indicates that, shortly after the January 23, 2024 shooting, at approximately 4:05 AM, Mills's phone was used in the vicinity of C-1's home address in Washington, D.C. The same cell cite data indicates that, prior to the phone's activity near C-1's home at the time of the shooting, its last use occurred on the afternoon of January 22 near his home in Brandywine, Maryland.

Moreover, Defendant Mills has posted numerous images and videos of himself handling firearms on social media and has admitted to shooting at C-1's bedroom in social media and text messages. Prior to the shootings, Defendant Mills posted numerous videos to his Instagram account documenting himself handling firearms, including videos of himself loading and/or manipulating firearms with his hands. Mills is prohibited from possessing a firearm, as he has been previously convicted of a crime punishable by imprisonment for a term exceeding one year, in Charles County Circuit Court Case Number 08K14000007.

Further, Mills has admitted to shooting at C-1's home. On February 4, 2024, Defendant Mills received an Instagram message asking "Where [variation of C-1's name] at." Mills responded, "I shpt her room up," followed by a "Bitmoji" image of a man crying and laughing, and then clarified "Shot." On February 5, 2024, in the course of a text message conversation with

---

[8] Ring and other similar types of home surveillance systems retain footage based on activation criteria, typically movement within the field of view. Upon activation, footage may be generated for a specific duration of time, or until significant movement ceases. For this reason, it is not uncommon for only portions of incidents to be captured on these systems, particularly when the action is at a distance.

Defendant Roberts about a third party, Defendant Mills wrote, "She mad about me shooting up [C-1's name] house."

Defendant Mills has been indicted on Counts 1, 2, 3, and 4 in connection with the January 23, 2024 shooting, which targeted C-1's bedroom.

## V.    Continued Stalking During and After Shootings

Between and after the shootings, Defendant Mills continued to repeatedly contact C-1. On January 22, 2024—between the January 22 and 23 shootings—C-1 received a call from an individual who allowed Mills to speak with C-1. During that phone call, Mills stated that he would kill C-1. On January 23, 2024, after the third shooting, C-1 received numerous messages from phone number 301-410-8333. One message (emphasis added) read "Better change your number again bitch. On God you and that n[redacted] meet up. **I hope you sleep tight bitch. Let's see you fuck when you're dead.**" C-1 again reported Mills's conduct to police on January 24, and when she showed her call log to officers, it contained sixty-three missed calls from phone number 301-970-6659; eighteen missed calls from phone number 301-372-9179; three additional missed calls from phone number 301-372-9179; and twenty-two missed calls from phone number 301-358-8512. C-1 also received several text messages from 301-358-8512. One of several text messages (emphasis added) read: "**PROMISE u im just getting started & im not stopping**. U wanted this, so u got it! Bet money u regret this choice! You should have just said let's talk and call this war off on god. Wait for whats next ! This is honestly too easy. You better try to get one of your guys to do something to help you [crying laughing emoji] Im just amazed how many people don't like u [crying laughing sideways emoji] but most people don't like hoes [shrugging emoji]."

On January 26, 2024, Defendant Mills was arrested and charged with Violating a CPO in

2024 DVM 000132 after he returned to C-1's home. The Court ordered Mills to stay away from and have no contact with C-1 and to stay away from the vicinity of her home. However, C-1 reported to law enforcement on January 30, 2024 that an individual she believes to be Mills continued to contact her. Additionally, on January 29, 2024, a relative of C-1 who lives with her recovered additional explicit images from the front yard of the home. C-1 was not home at the time of that offense.

## VI.   Arrest and Charging

On February 7, 2024, Defendant Mills was arrested pursuant to a warrant issued by the Superior Court of the District of Columbia, charging him with two counts of Assault with Intent to Kill, two counts of Assault with a Dangerous Weapon, and one count of Contempt.[9] The following day, Defendant Roberts was arrested pursuant to a Superior Court warrant for two counts of Assault with Intent to Kill and two counts of Assault with a Dangerous Weapon.[10] Both defendants were held pursuant to 23 D.C. Code § 1325(a). Those cases (2024 FD1 001425 and 2024 CF1 001299), along with a misdemeanor case in which Defendant Mills was charged with one count of CPO Violation (2024 DVM 000132), were pending in D.C. Superior Court until their dismissal following the defendants' indictment in the instant case.

On July 18, 2024, a United States District Court Grand Jury returned the seven-count indictment in this case, and the Court issued arrest warrants for both defendants. On July 22, 2024, the defendants were arraigned. The government requested that both defendants be held pursuant to 18 U.S.C. § 3142(f)(1)(A) and (E).

---

[9] D.C. Superior Court Arrest Warrant 2024 CRWSLD 000533 charged Defendant Mills in connection with the January 21 and 23, 2024 shootings as well as a subsequent incident in which Defendant Mills reportedly returned to C-1's home on February 4, 2024.

[10] D.C. Superior Court Arrest Warrant 2024 CRWSLD 000587 charged Defendant Roberts in connection with the January 21 and 22, 2024 shootings.

## ARGUMENT

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). Where a defendant is charged, as Defendant Mills is, with a violation of Section 924(c), "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(B). In determining whether any condition or combinations of conditions will assure the safety of the community, in light of applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). The government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing is not a discovery device. *See Smith*, 79 F.3d at 1210; *Williams*, 798 F. Supp. at 36.

The facts and circumstances of this case demonstrate that there is no condition or

combination of conditions that will reasonably assure the safety of any other person and the community from either defendant. Both Defendant Mills and Defendant Roberts should therefore remain detained pending trial.

## I.     Defendant Roberts

For the reasons that follow, the government submits that no condition or combination of conditions that will reasonably assure the safety of any other person and the community if Defendant Roberts were to be released.

### a.    <u>Nature and Circumstances of the Offense Charged</u>

Defendant Roberts has been indicted on three extremely serious offenses, all committed while he was on probation for a firearm-related offense. As a threshold matter, Defendant Roberts's participation in a coordinated attack that involved the use of a handgun against another person was an inherently dangerous act that placed C-1 and the community at risk. *See, e.g.*, *United States v. Gassaway*, No. 21-CR-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-MJ-181 (BAH), 2020 WL 5642288, at *2–3 (D.D.C. Sept. 21, 2020) (making same observation); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a firearm "has the great potential to escalate into violence"). Here, Defendant Roberts knew he was not permitted to possess a firearm because he was on probation for unlawfully possessing a firearm. Moreover, here, he did not merely possess the firearm— Roberts actively used the firearm to shoot directly into C-1's bedroom in a coordinated assault.

Further, the circumstances surrounding the assault are deeply troubling. Defendant Roberts was willing to execute the vengeance of his friend, Defendant Mills—someone who was plainly vindictive and obsessed with revenge against C-1. Defendant Roberts not only supported

Mills's efforts without question, but he was literally willing to be the person to pull the trigger. On January 22, Roberts targeted C-1's bedroom window in the early hours of the morning when she was likely to be home and in bed asleep.

The evidence indicates that the January 22 shooting was the second shooting in which Roberts was involved. Further, Defendant Roberts bragged in text messages to Mills about his aim; he was proud of his ability to shoot at an innocent woman in the middle of the night.

Thus, the nature and circumstances of the offense weighs in favor of detention.

### b. Weight of the Evidence Against the Defendant

The evidence against the defendant is exceptionally strong. Thus, the strength of the evidence weighs heavily in favor of detention. The circumstances of the January 22, 2024 shooting are depicted on video and corroborated by the Shotspotter report, witness accounts, physical evidence, and license plate reader evidence. Roberts was arrested in a jacket that appears to be the same jacket depicted on surveillance of the shooter and was returning to the same truck depicted on surveillance. A license plate reader check revealed that the truck was in proximity to the shooting during the relevant time period, and Roberts acknowledged being present in the truck, but not the driver, in the vicinity of C-1's home on January 22.

Moreover, the fact that Defendant Roberts acted at the behest of Defendant Mills is clear from their social media messages. In Instagram messages, Mills reprimanded Roberts for the way he shot into the bedroom. Specifically, Mills wrote: "On god. Like son. ONE job tf is wrong with u. Like son this is embarrassing me . . . ." The next day, Defendant Roberts admitted to his role in text messages: "All 6 shots went threw that one hole because I never move my hand the aim was steady asf." The weight of the evidence therefore also weighs heavily in favor of detention.

### c.  **History and Characteristics of the Defendant**

Defendant Robert's history and characteristics demonstrate that he is unlikely to comply with any conditions of release. Defendant Roberts is currently on probation in Prince George's County, Maryland Case C-16-CR-23-001430. In that case, he was arrested on April 9, 2023 and convicted on October 6, 2023 of Firearm Possession with a Felony Conviction. Roberts was sentenced to five years with three years and six months suspended in favor of one year of supervised probation. Records indicate that, after being placed into probation on October 6, 2023, Defendant Roberts never reported. He quickly became a loss of contact and now has an extraditable warrant in Prince George's County.

Defendant Roberts's arrest in that Prince George's County case came less than six months after he was sentenced in an Unauthorized Use of a Vehicle in Arlington, Virginia Case GC22003506-00. The defendant was on probation in that case at the time of the offense in Prince George's County Case C-16-CR-23-001430 as well as at the time of the instant offenses. A probation violation warrant is active in Arlington case GC22003506-00 as well.

Defendant Roberts's history consists of several other arrests and convictions. These include Trespass and Identity Theft as well as a 2019 Robbery conviction. In that case, Defendant Roberts was sentenced on July 26, 2019 to five years of incarceration with four years, five months, and 15 days suspended in favor of three years of supervised probation. That probation period would have been scheduled to end very shortly before Defendant Roberts's arrest in Arlington Case GC22003506-00.

Defendant Roberts's history demonstrates regular contact with the criminal justice system, including multiple arrests while on probation in other cases. He has made clear that, when given the opportunity to proceed with probation, he does not comply with the Court's

conditions. Further, Defendant Roberts has repeatedly committed new offenses while on probation, suggesting that the Court's requirements do nothing to deter him from criminal conduct. Perhaps most troubling is the fact that, less than three months after his release into probation *for a conviction for Firearm Possession by a Felon*, Roberts chose to use a firearm to assault C-1 as part of Defendant Mills's "war."

Defendant Roberts's history and characteristics weigh heavily in favor of detention.

### d.  <u>Nature and Seriousness of the Danger to Any Person or the Community</u>

Finally, the evidence here establishes that Defendant Roberts presents a danger to the community. As an initial matter, Defendant Roberts's use of a firearm—particularly while prohibited from possessing a firearm and on probation for unlawful possession of a firearm—necessarily presents a danger to the community. Judges of this Court have consistently recognized the inherent dangerousness of carrying a concealed, loaded firearm. *See United States v. Gassaway*, 1:21-cr-00550 (RCL), ECF No. 9 (D.D.C. Sept. 16, 2021) ("This Court agrees with other courts in this district that unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public."); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020) ("[T]he possession of a firearm, especially while seemingly on a drug such as PCP, presents a serious danger to the community."); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community."). Here, that danger is heightened by the fact that, at the time of the offenses, Defendant Roberts was on probation specifically for unlawfully possessing a

firearm. He carelessly reoffended within three months by not only possessing another firearm but using a firearm against another person.

Here, Defendant Roberts's conduct went well beyond the possession of a firearm. Defendant Roberts carried that firearm and proceeded to C-1's home at the urging of Defendant Mills. There, Defendant Roberts pointed the firearm into C-1's bedroom at approximately 3:06 AM and shot through her window. Roberts's willingness to take such dangerous action toward a vulnerable person, demonstrates the danger he presents to the community. The circumstances of this case were not personal for Defendant Roberts or tied to any relationship specific to C-1. Such a cavalier willingness to engage in gun violence demonstrates the grave danger Defendant Roberts presents to the community at large. Thus, this factor weighs heavily in favor of detention.

## II.      Defendant Mills

Because Defendant Mills is charged with a violation of Section 924(c), there is a statutory presumption in favor of his pretrial detention. *See* 18 U.S.C. § 3142(e)(3)(B). Defendant Mills cannot rebut the presumption in favor of detention, and no condition or combination of conditions will reasonably assure the safety of any other person and the community.

### a.   <u>Nature and Circumstances of the Offense Charged</u>

The nature and circumstances of the offenses charged weigh heavily in favor of detention. Defendant Mills has been indicted on extremely serious offenses related to the January 23, 2024 shooting, including crimes of violence. Defendant Mills traveled across state lines, with a firearm he was not legally permitted to possess, and at 3:57 AM, shot into his ex-girlfriend's bedroom. Defendant Mills specifically shot into the window closest to C-1's bed, breaking the

window and leaving bullet holes in the ceiling directly above where she sleeps. These actions were designed to target C-1 at a time when she was likely to be in bed, asleep in the room into which Defendant Mills was shooting. Defendant Mills's actions directly threatened, and indeed sought to end, C-1's life.

The surrounding circumstances demonstrate the severity and sheer lethality of Defendant Mills's actions on January 23, 2024. These offenses did not occur in a vacuum. Rather, they were the culmination of what Mills, in his own words, labeled a "war" against C-1 who—in his estimation—wronged him simply by choosing not to be with him. For months, Defendant Mills threatened and harassed C-1 by phone, email, and social media. Defendant Mills made repeated efforts to threaten and blackmail C-1 into complying with his demands, and when those failed, he sought to punish her. He showed up at her home and workplace and even put a gun to her head. Mills published C-1's sexually explicit images outside her home and disseminated her personal information, images, and videos on the internet and in messages. Despite a CPO, Mills continued to contact and threaten C-1.

Defendant Mills made clear he would not be deterred in his efforts to harm C-1. All three shootings occurred after Defendant Mills had been served in CPO proceedings and directed to stay away from and not contact C-1. Further, in between the January 22 and 23 shootings, Mills specifically told C-1 over the phone that he would kill C-1. He continued to return to her home after the shootings, including when he was arrested on January 26 and again after his release in 2024 DVM 000132.

Mills can offer no reason to believe that, if released, he would behave any differently. Thus, the nature and circumstances of the offense weighs in favor of detention.

    **b.  <u>Weight of the Evidence Against the Defendant</u>**

The weight of the evidence against the defendant is exceptionally strong. The circumstances surrounding the shooting are depicted on video and corroborated by the Shotspotter report, witness accounts, and physical evidence. Defendant Mills has repeatedly explained his intentions in his own words and admitted to the shooting in communications that are clearly tied to him. Thus, the strength of the evidence weighs heavily in favor of detention.

### c.   History and Characteristics of the Defendant

Defendant Mills's troubling history and characteristics likewise weigh in favor of detention. Mills has several prior convictions and a history of failure to comply with court orders. In 2011, Mills was convicted of unlawfully carrying or transporting a handgun in Charles County Case 08K11000621. While that case was pending, Mills was arrested for Theft in another Charles County case and subsequently convicted. In 2013, Mills was arrested and charged in Upper Marlboro, Maryland, in Case Number CJ136226. That case resulted in a 2014 conviction for Rogue and Vagabond with Intent to Commit Motor Vehicle Theft.

Next, Defendant Mills was convicted in 2014 of Assault in the Second Degree in Charles County 08K14000007. That conviction followed a trial in which Defendant Mills was also charged with rape. Although Mills was acquitted of the sexual assault charge, the 2014 sentencing judge in that case specifically noted the profound harm Mills had caused the victim as well as his lack of remorse. According to Maryland court records, Mills was sentenced in 2014 to a period of ten years of incarceration, with eight years suspended and five years of probation. In May 2021, that sentence was amended to a sentence of four years of incarceration imposed with two years and five months suspended. Notably, Defendant Mills's probation term closed unsatisfactorily, and records indicate a number of violations.

On November 10, 2023, police responded to Mills's residence in reference to an incident

in which Mills allegedly physically assaulted his mother. Although no charges were filed in that case, Mills appears to have admitted to this conduct in messages to C-1, noting "I beat up my own bitch mother & fought her husband before! u really think im scared of ANYONE?" Relatedly, Mills currently faces pending criminal charges in Dauphin County, PA Case CP-22-CR-00000186-20. This case concerns an incident on December 22, 2023, in which Mills reportedly physically assaulted the individual whom C-1 later observed with Mills on January 20, 2024. Mills appears to have admitted to that assault as well in text messages with C-3. The individual who is the victim in the Dauphin County has since sought and obtained a protective order requiring Mills to stay away from her. Indeed, at least four different women currently have protective orders against Mills.

Thus, the history and characteristics of Defendant Mills weigh heavily in favor of detention.

### d.  <u>Nature and Seriousness of the Danger to Any Person or the Community</u>

Finally, the evidence establishes that Defendant Mills presents a danger to the community, to C-1, and to other individuals in his life. Defendant Mills is accused of threatening and assaulting multiple individuals just since November 2023. He has engaged in the dissemination of non-consensual pornography of at least two individuals on multiple occasions. Defendant Mills's conduct toward C-1 escalated dramatically to the point of recruiting another individual, Defendant Roberts, to shoot into her bedroom, and then, when he was dissatisfied with Roberts's shooting, Mills returned to her home himself on January 23, 2024. Defendant Mills engaged in the charged offenses in violation of a CPO and has repeatedly made clear to C-1 that he will not stop his behavior. If Mills were to be released, he would present a grave danger to C-1, his other victims, and the community in general.

Defendant Mills also has threatened and harmed his own family members, who presumably would be the individuals to whom he would return if released. As noted above, Mills has bragged in text messages about assaulting his mother.

Furthermore, as noted, the Section 924(c) charge in this case gives rise to a presumption that there is no combination of conditions that can assure the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(B). The rebuttable presumption applicable here reflects Congress's common-sense judgment that the use of a firearm to facilitate a violent crime makes a defendant presumptively dangerous, and that such individuals should be detained to ensure the safety of the community. Congress's judgment about the danger posed by such offenses is further reflected by its decision to prescribe mandatory-minimum terms of imprisonment for such crimes. Where, as in this case, a firearm is discharged in the course of a crime of violence, the law imposes a mandatory minimum penalty of ten years of incarceration. 18 U.S.C. § 924(c)(1)(A)(iii).

The presumption shifts the burden of production to the defense—but even where the defense produces credible evidence rebutting the presumption, the presumption retains evidentiary weight and is still considered by the Court in assessing the Section 3142(g) factors. *See United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991) ("When a defendant produces such evidence, however, the presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight" (citations omitted)); *United States v. Ali*, 793 F. Supp. 2d 386, 388 n. 2 (D.D.C. 2011) ("[C]ircuits that have considered the issue require using the presumption as a factor even after the defendant has produced credible evidence."). Here, the defense cannot rebut the presumption, and regardless, the danger Defendant Mills presents to the community weighs heavily in favor of detention.

## **CONCLUSION**

For all of the reasons set forth above, and any other reasons set forth at any hearing on

this issue, a consideration of the evidence in this case and the applicable statutory factors compels the conclusion that both Defendant Roberts and Defendant Mills should be detained pending trial.

WHEREFORE, the government respectfully requests that the Court grant its motion for detention of the defendant.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY


By:    */s/  Kathleen Houck*
Kathleen Houck
Assistant United States Attorney
PA Bar No. 325947
DC Bar No. 1659710
U.S. Attorney's Office
601 D. Street NW
Washington, D.C. 20579
202-252-7085
kathleen.houck@usdoj.gov